IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JUSTIN FAHN,<br><br>Plaintiffs,<br><br>v.<br><br>GARDAWORLD FEDERAL SERVICES LLC and AEGIS DEFENSE SERVICES LLC,<br><br>Defendants. | CIVIL ACTION NO. 5:20-cv-128 (MTT) |

## ORDER

Relator Justin Fahn moves to amend his complaint after the deadline to amend pursuant to Federal Rule of Civil Procedure 16(b).  Doc. 76.  Fahn contends the proposed second amended complaint ("SAC") "adds no new claims and no new parties to the case" but merely seeks to provide additional "color" and "detail." *Id*. at 1-2.  Defendants Aegis Defense Services LLC and GardaWorld Federal Services LLC oppose the motion, arguing that Fahn was not diligent in seeking to amend his complaint and that the SAC asserts a new theory of liability.  Doc. 84.  For the reasons discussed below, Fahn's motion to amend (Doc. 76) is **DENIED**.

### I. BACKGROUND

Fahn's first amended complaint ("FAC"), the operative complaint, alleges Aegis, d/b/a GardaWorld, contracted with the United States Department of State to provide security in Afghanistan at various locations, including the United States Embassy in

Kabul (i.e., the WPS II contract).  Docs. 44 ¶¶ 1, 30; 45 ¶¶ 1, 30.  Fahn was hired by GardaWorld in September 2016 to defend the embassy, and he worked there until its fall to the Taliban in August 2021.  Doc. 44 ¶ 2.  From 2018 until 2021, Fahn's duties as a Unit Support Coordinator included ensuring that guards employed by GardaWorld were sufficiently trained and passed certain physical fitness tests required by the government contract.  *Id.* ¶¶ 3, 18.  These testing and training requirements were necessary for employees to be considered qualified and billable.  *Id.* ¶ 24.

      The FAC alleges that GardaWorld engaged in two "systematic schemes" to defraud the United States by falsifying documents that verified compliance with "physical fitness testing requirements" and "training requirements."  Doc. 45 ¶¶ 4-5, 26, 40-55, 114-26.  The first fraudulent scheme involved the falsification of "clean sheets" and "certifications" used to verify "that employees properly underwent and passed" the physical fitness test "known as [the] Physical Efficiency Battery ('PEB')."  *Id*. ¶¶ 40, 45-47.  Fahn's FAC provides examples of eight employees that GardaWorld falsely certified had taken and passed the required PEB.  *Id*. ¶¶ 4, 56-113.  The second fraudulent scheme involved the falsification of documents that verified compliance with various "training requirements"—including "initial training before [GardaWorld employees] arrived in Afghanistan, as well as training while in Afghanistan."  *Id*. ¶ 4.  Specifically, the FAC alleges that GardaWorld was required to provide "basic training … prior to … deployment" and annual "in-service refresher training" in Afghanistan.  *Id*. ¶¶ 115, 118.  Fahn provides examples of "at least ninety-one" employees that GardaWorld falsely certified had successfully completed training classes.  *Id*. ¶¶ 4, 127-153.

Fahn alerted the Government to the alleged fraud and then filed his original complaint, asserting claims pursuant to the False Claims Act, under seal in March 2020. Doc. 3. The Government investigated the fraud for 17 months before declining to intervene on September 1, 2021, roughly two weeks after the fall of the Kabul embassy and the United States' withdrawal from Afghanistan. Doc. 15. Fahn filed the FAC on February 3, 2022, and GardaWorld moved to dismiss on February 17, 2022. Docs. 44; 45; 49. The Court denied GardaWorld's motion to dismiss on July 8, 2022. Doc. 56.

On July 18, 2022, the Court entered a scheduling and discovery order setting a September 16, 2022 deadline to amend pleadings. Doc. 57 at 6. Discovery commenced and on March 31, 2023, GardaWorld notified Fahn that its document production was substantially complete. Doc. 84-4. Two months later, on May 31, 2023, Fahn asked the Court to resolve a discovery dispute related to the March 31, 2023 document production. Doc. 72. Specifically, Fahn argued he could not "meaningfully" review the large volume of documents GardaWorld's produced without search terms or a table of contents. *Id*. at 8. On June 9, 2023, the Court directed GardaWorld to either "organize and label" the documents produced "to correspond to the categories in the request" or provide Fahn with "a list of search terms that will enable him to isolate the different types of documents … without having to sift through extraneous material." Attachment 1. GardaWorld provided Fahn with a list of search terms, which Fahn used to review GardaWorld's document production and contact potential witnesses to support his claims. Docs. 76 at 10-11; 84-12.

On October 4, 2023—more than a year after the deadline for filing amended pleadings passed—Fahn moved for leave to file the SAC. Doc. 76. On November 9,

-3-

2023, the Court convened a hearing to discuss ongoing discovery issues. Docs. 94; 93. During the hearing, GardaWorld claimed that Fahn's SAC raised a new theory of liability and, thus, expanded the scope of discovery. Doc. 93 at 15:13-25.

Generally, Fahn's SAC adds: examples of fraud; contract provisions; sources of fraudulent documentation; and support for Fahn's allegations that the misrepresentations were material. Doc. 76-1. Fahn contends the SAC is necessary to "address the Court's" concerns that Fahn's allegations of fraud were "thin." Docs. 56 at 27; 76 at 12. GardaWorld argues Fahn's motion to amend should be denied because the SAC is "based on facts that he knew or could have known well before the September 2022 amendment deadline" and "assert[s] an entirely new theory" of liability. Doc. 84 at 5.

## II. STANDARD

Federal Rule of Civil Procedure 16 controls when a motion to amend a pleading is filed after the scheduling order deadline. *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause [the movant's] motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)."). "Under Rule 16, scheduling orders may be modified only for good cause, and only when the schedule 'cannot be met despite the diligence of the party seeking the extension.'" *Pinero v. 4800 W. Flagler L.L.C.*, 430 F. App'x 866, 869 (11th Cir. 2011) (quoting *Sosa*, 133 F.3d at 1418 (quoting Fed. R. Civ. P. 16 advisory committee's notes)). "Diligence is evaluated by considering the following factors: (1) whether the plaintiff failed to ascertain facts prior to filing the complaint and to acquire information during the

discovery period; (2) whether the information supporting the proposed amendment was available to the plaintiff; and (3) whether even after acquiring the information the plaintiff delayed in seeking the amendment." *Kernal Recs. Oy v. Mosley*, 794 F. Supp. 2d 1355, 1369 (S.D. Fla. 2011), *aff'd on other grounds*, 694 F.3d 1294 (11th Cir. 2012). The burden to establish good cause is on the moving party. *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1366 (11th Cir. 2007). And "the likelihood of obtaining permission to amend diminishes drastically after the court enters a scheduling order with deadlines for amendments that have expired." *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007).

Once good cause is shown under Rule 16, the Court will consider whether leave should be granted under Rule 15. *Smith*, 487 F.3d at 1366. Rule 15(a)(2) states that leave to amend should be "freely give[n] ... when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court "need not, however, allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962), *overruled on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002)). "The decision whether to grant leave to amend a complaint is within the sole discretion of the district court." *Laurie v. Ala. Ct. of Criminal Appeals*, 256 F.3d 1266, 1274 (11th Cir. 2001).

### III. DISCUSSION

GardaWorld contends that Fahn's motion to amend should be denied for two reasons. First, GardaWorld argues that Fahn has not demonstrated diligence under Rule 16(b) because he was or should have been aware of the information that forms the basis of the SAC before the deadline to amend. Doc. 84 at 8-13. Second, GardaWorld opposes Fahn's motion to amend because the SAC adds a "new" theory of liability. *Id*. at 19-21. The Court agrees in part. While Fahn has not demonstrated diligence, the SAC does not raise a new theory of liability. Rather, Fahn's proposed SAC is duplicative and redundant of the allegations in his FAC. Accordingly, Fahn's motion to amend is denied for lack of diligence and futility.

**A. Fahn has not demonstrated diligence.**

The crux of Fahn's diligence argument is that he was unable to obtain the information necessary to amend his complaint until the Court issued its June 9, 2023 letter resolving discovery disputes that arose from GardaWorld's March 31, 2023 document production. Doc. 76 at 7-11. However, Fahn does not explain what documents in GardaWorld's March 31, 2023 production were necessary to draft the SAC. *Smith*, 487 F.3d at 1367 (holding the movant must indicate with some "specificity the good cause he had for untimely moving to amend his complaint").

By contrast, GardaWorld identifies documents and witnesses cited in the SAC that Fahn knew about before the deadline to amend. Doc. 84 at 8-15. For example, the SAC references four letters to support Fahn's contention that GardaWorld's alleged misrepresentations were material and cites additional portions of the WPS II contract. Doc. 76-1 ¶¶ 215-20. GardaWorld attached the full version of the WPS II contract as an exhibit in its original motion to dismiss on January 13, 2022, and produced the relevant

letters on August 19, 2022 and September 2, 2022.  Doc. 84 at 13.  Fahn acknowledges that the additional contract provisions and references to the letters "could have been added earlier" but nonetheless should be allowed at this late stage "to make the SAC more understandable, readable, and helpful."  Doc. 89 at 11.  This is insufficient to demonstrate diligence.  *Donley v. City of Morrow, Ga.*, 601 F. App'x 805, 811 (11th Cir. 2015) ("A plaintiff lacks diligence when, prior to the scheduling order deadline, he … had full knowledge of the information with which he later sought to amend his complaint.").

Additionally, many of the "new" witnesses identified in Fahn's SAC are referenced in the attachments Fahn included in his initial required disclosures as containing "lists of employees who were not properly trained or were otherwise unbillable under the Contract."  Docs. 76-1 ¶¶ 179b-h, 183, 185; 84 at 15; 86-1.  Fahn contends, in conclusory fashion, that he could not interview witnesses about GardaWorld's alleged fraud until he reviewed GardaWorld's document production and he couldn't do that until after the Court's June 9, 2023 letter.  Doc. 76 at 7-11.  That bare assertion does not explain why Fahn could not interview witnesses he had long known about.  *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1299 (11th Cir. 2007) (holding no good cause to amend because, "with some investigation, [movant] could have discovered" the basis for its proposed amendment earlier); *Hix v. Acrisure Holdings, Inc.*, 2022 WL 17538687, at *2 (N.D. Ga. Dec. 8, 2022) (denying motion to amend for lack of diligence where movant's "amendments generally [arose] from the same fraudulent scheme that has been at the heart of this case from the beginning").

In sum, Fahn's "vague," "unspecific," and "generalized excuse[]" that he could not meaningfully review discovery until after the Court's June 9, 2023 letter is insufficient to demonstrate diligence. *Hix*, 2022 WL 17538687, at *2. But even if Fahn could demonstrate good cause for seeking to amend his complaint after the deadline set in the scheduling order, he must still satisfy Rule 15's amendment standard. Fahn has failed to do so.

**B. Fahn's proposed SAC is redundant and duplicative of the allegations in the FAC and, thus, unnecessary.**

GardaWorld asserts that the SAC does not merely provide additional examples of fraud but raises an entirely new theory of liability. Doc. 84 at 5. Specifically, GardaWorld contends that the FAC alleged "two" fraudulent schemes: (1) falsifying compliance with the contract's physical fitness testing requirements and (2) falsifying compliance with the contract's "pre-deployment and annual training" requirements "that occurred at GardaWorld's training facility in Perry, Georgia." Doc. 84 at 6. GardaWorld reads the SAC to add a claim for falsifying documents that verified compliance with "'refresher' training in Afghanistan." *Id*. at 11; *see* Doc. 93 at 15:23-25 ("**These allegations relating to 40-hour refresher training -- the first we heard about it was in the motion for leave to amend**.") (emphasis added). GardaWorld's argument is contrary to the record and its prior representations to the Court.

The FAC, filed on February 3, 2022, alleges two fraudulent schemes: (1) that GardaWorld falsified physical fitness documents and (2) that GardaWorld falsified training documents relating to "initial training before [GardaWorld employees] arrived in Afghanistan, **as well as training while in Afghanistan**." Doc. 44 ¶ 4 (emphasis

added).  The FAC specifically alleged that GardaWorld failed to comply with the WPS II contract requirement to provide pre-deployment "basic training" and post-deployment "in-service training," including "**forty hours of in-service refresher training**."  Doc. 45 ¶¶ 115, 118-19, 124, 126 (emphasis added).  Contrary to their representations that the SAC for the first time and to their surprise asserts a theory of liability based on 40-hour refresher training, GardaWorld's attorneys, in their motion to dismiss the FAC, said the fraudulent scheme encompassed "**40 hour[] … in-service refresher training**."  Doc. 49-1 at 13 (emphasis added).

Further, GardaWorld's claim that the FAC did not raise issues about post-deployment training in Afghanistan is belied by the scope of the parties' discovery.  For example, according to Fahn, GardaWorld produced "tens of thousands of pages of documents purporting to be all records of training under WPS II in Afghanistan, including sign-in sheets and other records for 40 hour training in Afghanistan."  Doc. 89 at 4.  And when the Court ordered GardaWorld to provide search terms to assist Fahn's document review, GardaWorld provided terms explicitly covering the 40-hour training requirement.  Doc. 84-12 at 4 ("Training Records including, but not limited to … Annual Training Trackers, Annual Refresher Training Trackers, **40-Hour Training Schedules**.") (emphasis added).

In short, GardaWorld's attorneys' assertions—that they were unaware that post-deployment training in Afghanistan was at issue and that the SAC states a new theory of liability they had never heard of—have no basis in fact.  Doc. 93 at 15:16-25, 23:22-24:3.  They are false.  Their real problem is that they have been surprised by the work Fahn has done while they have been watching the time for discovery slip by.  For

example, as of October 31, 2023, GardaWorld had not yet deposed Fahn. Doc. 89-8 at 3.[1]

Because Fahn's proposed SAC does not expand the scope of liability, it is superfluous. As Fahn puts it, the proposed SAC "merely adds color and detail to [his] existing claims and allegations." Doc. 76 at 6, 14 ("The SAC maintains these same two claims against the same two defendants based upon the same contractual provisions and the same misconduct."). The purpose of Fahn's SAC is "to address the questions raised by this Court" in its order on the motion to dismiss as to whether Fahn's claims would "ultimately prevail" after discovery. *Id*. at 1-2; Doc. 56 at 27. That is a pointless exercise. The Court denied the motion to dismiss. Doc. 56. Beefing up allegations now serves no point. Well, perhaps one point. Fahn's detailed allegations served as a wake-up call for GardaWorld's attorneys.

Because Fahn's SAC is redundant and duplicative of the allegations in the FAC, the proposed amendments are futile. *Cieutat v. HPCSP Invs., LLC*, 2020 WL 2199618, at *1 (S.D. Ala. May 6, 2020) (noting that proposed amendments are futile when they are "duplicative" or "redundant" of existing allegations and claims) (citing *Lees v. Sea Breeze Health Care Ctr., Inc.*, 391 F. Supp. 2d 1103, 1106 (S.D. Ala. 2005)); *see Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 850 (7th Cir. 2002) ("A court may determine that a proposed amendment is futile if it sets forth facts or legal theories that are redundant, immaterial, or unresponsive to the allegations in the

---

[1] In a barrage of emails to the Court, GardaWorld's attorneys have leveled numerous accusations against Fahn's attorneys. This attack on the ethical front also seems to be a product of their surprise at Fahn's attorneys' industriousness.

complaint."); *Jackson v. Riebold*, 815 F.3d 1114, 1122 (8th Cir. 2016) ("Duplicative … claims are futile."); *Murray v. Schriro*, 745 F.3d 984, 1015 (9th Cir. 2014) (same).

### IV. CONCLUSION

Accordingly, Fahn's motion to amend (Doc. 76) is **DENIED** for lack of diligence and futility.

**SO ORDERED**, this 21st day of November, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
