UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JUSTIN FAHN, <br><br> Plaintiffs, <br><br> vs. <br><br> AEGIS DEFENSE SERVICES, LLC, <br><br> Defendant. | CIVIL ACTION NO. <br><br> 5:20-CV-000128-MTT |

### RELATOR'S RESPONSE TO DEFENDANT'S TRIAL BRIEF

In its trial brief, GardaWorld outlines its trial strategy.

For example, GardaWorld continues to argue its lack of liability for its employees, despite binding Eleventh Circuit precedent. Further, if GardaWorld, despite its own documents and witnesses' testimony regarding the same, attempts to create post-discovery declarations describing oral conversations with unnamed personnel that coincidentally relieved them of the obligation to comply with the written terms of the contract. GardaWorld even names lead counsel for the United States Attorney's Office on its trial witness list.

This case is not as complicated as GardaWorld wants to make it. As for its trial brief, many of these issues have been briefed previously and aim to do nothing other than to confuse the Court and the jury about the real issues. This is an extension of GardaWorld's strategy during the course of the KESF contract. Relator will not exhaustively lay out what the evidence will be at trial. Instead, Relator succinctly responds below to GardaWorld's trial brief and will be prepared to address these issues, as necessary, at the pretrial conference.

I. **Relator's Complaint Contained a Count Under Section 3729(a)(1)(B), GardaWorld Knew Relator Alleged Such a Claim, and That Claim Remains Pending as to Annual Refresher Training.**

As set forth in Section 21 of the Pretrial Order, GardaWorld informed Relator as part of the exchange of Pre-Trial Order drafts of its view that there is no 3729(a)(1)(B) claim in this case. GardaWorld now argues Relator did not identify any false records or statements, yet even a cursory review of Relator's briefing and evidence in the record at summary judgment indicates the opposite. *See* Doc. 125 (Section IV.B) (identifying numerous false and fraudulent records and statements in a bolded section titled "Evidence exists as to false statement claims and records."); *see also* Section II. All of these false records and statements are actionable as false records or statements under 3729(a)(1)(B) for purposes of penalties.

The Court's order clearly recognized false records and false statements under 3729(a)(1)(B) that will be introduced into evidence at trial. *See* Doc. 157 at 9 ("Fahn contends that GardaWorld engaged in a 'scheme to deliberately falsify training documents and forge signatures to show . . . training occurred when it did not.'"), *id.* at 16 ("Juanchi's testimony, described above, is an illustrative example of a single GardaWorld employee who knew about the false sign-in sheets."). And the same is true of Relator's disclosures that stated he was seeking penalties for false records and statements since the start of this case. *See* "Relator's Third Supplemental Initial Disclosures" **(attached as Exhibit A)** and "Relator's Eighth Supplemental Initial Disclosures" **(attached as Exhibit B)**. GardaWorld feigning surprise Relator is seeking penalties for false records and statements—long a focus of Relator's case—is meritless. Relator incorporates his response from the Pretrial Order and seeks the Court's guidance at the pretrial conference.

## II. Relator Will Prove Invoices Submitted by GardaWorld are Claims.

That GardaWorld apparently intends to contest so-called "purported invoices" ever "presented" to the United States. Make no mistake, these are invoices produced in discovery *by GardaWorld* and reflected on GardaWorld's internal records as paid by the United States. This is yet an illustration of the scorched-earth tactics displayed by Defendant from the start of this case. Even though there is no legitimate dispute, Relator will nonetheless meet his burden as to presentment and will seek clarification at the pretrial conference from GardaWorld as to whether it intends to contest its own business records.

## III. Relator Will Prove GardaWorld's Invoices Were False.

Relator will prove by a preponderance of the evidence that, as to each invoice, at the time GardaWorld submitted the invoice: (1) personnel for whom GardaWorld was seeking payment in the invoice were not in compliance with the Annual Refresher Training requirement; (2) GardaWorld misleadingly omitted this non-compliance; and (3) because GardaWorld did not act in accordance with the contract, the invoices were false.

GardaWorld's theory of defense largely turns on its attempts to re-define the plain language of WPS II to absolve them of responsibility. The terms of WPS II are clear—the parties' agreement documented within the four corners of the contract provides the terms GardaWorld needed to perform, and the only way to modify those terms was through a specific approval process through the Contracting Officer. *See* WPS II Contract (Doc. 147-12) at GWFS00220413; *see also* M. Mancini Dep. Tr. (Doc. 147-34) at 40:7-14, 52:7-13, 315:6-18; McNichols Dep. Tr. (Doc. 147-169) at 267:12-19, 268:1-20; GardaWorld 30(b)(6) Dep. Tr. (Doc. 125-6) at 78:9-12; Delegation of Authority Memorandum (Doc. 125-7) (preventing even an ACOR from modifying the contract).

With the exception of the COVID Waiver, GardaWorld has not identified any contract modification that would change the relevant terms.

Relator's position has been and will be at trial the words of WPS II mean what they say: annual training means training each 365 day period, (not more and not less than 365 days), training begins when the individual commences work (not at some arbitrary point in time GardaWorld believes it should start); forty hours is a measure of time and means forty hours (not whenever GardaWorld believes the individual has learned enough); "unqualified" means not qualified (and not what the government paid for); "unbillable" means do not bill (not GardaWorld should keep billing and see if they get caught).

As just one illustration of this, GardaWorld's attempts to spin a GardaWorld list of classes signed by a Department of State employee into a contract modification to relieve GardaWorld of the obligation to conduct any training at all in the first year (despite what the contract says). [1] GardaWorld did not depose this Department of State employee. Relator has asked for this State Department employee to appear at trial. GardaWorld does not want this individual to appear at trial. GardaWorld asked another Department of State employee about this document—the State Department witness strongly disagreed with what GardaWorld argued it meant. GardaWorld then elected not to ask the Contracting Officer about this document at all (likely fearing she would give the same testimony). Despite having no factual basis to make this assertion, GardaWorld argued, at summary judgment and in various pretrial filings, this one document relieves them of an entire year of training.

---

[1] Relator has briefed this issue in response to GardaWorld's motion for a protective order and has filed a motion in limine to prevent GardaWorld from making an assertion that the contract changed (without any evidence whatsoever to support that contention). *See* Doc. 164 at 7-14 (Motion in Limine) and Doc. 202 (Response to Motion for Protective Order).

GardaWorld's representations to the Court look even worse when assessed alongside its own communications at the time this document was created. These communications show the purported modification was simply meant to be a list of classes. Far from being a massive modification changing the terms of the WPS II 40 hour training requirement, it was not a modification at all. But, as GardaWorld's trial brief states, one document—signed by a witness it declined to list on the witness list—means they are not liable for an entire year of training and Relator's summaries are all wrong. This is a defense of smoke and mirrors, not the truth.

When GardaWorld's advocacy is stripped away, GardaWorld's position requires the Court and the jury to, conveniently, disregard the plain language of the contract as to every remaining claim and theory in Relator's case in chief and embrace what GardaWorld wishes the contract said instead. And, as to the argument DoS was "aware of the purported non-compliance", that representation is flatly contradicted by the DoS Contracting Officer and other depositions in this case. *See* M. Mancini Dep. Tr. (147-34) at 343:4-354:21, 363:7-11-364:13, 364:14-354:22, 370:4-370:22, 373:16-19, 376:21-377:10. The jury will similarly find GardaWorld's arguments—when put to the test of a trial—to be lacking any credibility whatsoever.

**IV.    Relator Will Prove GardaWorld Acted With the Required Intent.**

GardaWorld advanced this scienter argument at summary judgment, and the Court properly rejected it. Doc. 157 at 14-19. The evidence presented at trial will be even more compelling than presented at summary judgment—in part from additional corroborating documents and in part from GardaWorld employee testimony who participated in and knew of this scheme. Far from "unrefuted," the jury will see the choices GardaWorld's employees made—in various roles and positions.

Moreover, GardaWorld's attempts to blame this entire scheme on "Relator and his handful of confederates" opens the door to yet additional evidence in this case involving a range of conduct (at various times, locations, and issues) to show that GardaWorld's training scheme extend far beyond Relator. As set forth in response to various motions in limine, GardaWorld cannot, on the one hand, claim Relator is solely to blame and then seek to exclude evidence of the same and similar conduct occurring with no involvement whatsoever on the part of Relator.

Finally, GardaWorld intends to tell a jury it is not liable when its own employees have already admitted the scheme and GardaWorld acted with scienter. GardaWorld's argument that non-management personnel cannot bind GardaWorld is squarely foreclosed by binding precedent. *Grand Union Co. v. United States*, 696 F.2d 888, 891 (11th Cir. 1983). *U.S. ex rel. Schutte v. SuperValu Inc.*, as this Court has held, had nothing to do with the analysis of a company's liability for its employees. Doc. 157 at 16. *Grand Union* and this Court's analysis is correct, notwithstanding how much GardaWorld wishes it were not so. At trial, if a jury believes even a single one of those individuals—regardless of position or job title—that the scheme occurred, GardaWorld then had the requisite scienter, and evidence shows GardaWorld nevertheless billed and received payment, then GardaWorld violated the FCA. That such evidence exists and will be presented is not in legitimate dispute—GardaWorld, through its employees, violated the FCA. The real question is the extent of the fraud.

**V.     The Annual Refresher Training Requirement is Material.**

The Court has analyzed this issue and, as the Court correctly concluded, this is an issue for the jury.

A.  <u>The Annual Refresher Training Requirement is a Condition of Payment</u>.

GardaWorld makes a bizarre argument (also raised at oral argument for summary judgment) that attempts to parse a wording distinction in the contract that someone can be "unqualified" but not "unbillable." Aside from the absurdity State Department would pay for someone who is by definition "unqualified," GardaWorld also ignores the plain language of the contract.

Attachment 2 to WPS is the Specifications for Contractor Training Capability. WPS II Contract (Doc. 147-12) at GWFS00220611. Section 1 is the introduction to the Contractor Training Program, and Section 1.3 specifically says the Government will consider any personnel who do not successfully complete the required training to be "unqualified" and "unstaffed," then specifically references section H.26. *Id*. at GWFS00220612. Section H.26 makes clear for any "unstaffed" personnel, the Contractor is "prohibited from billing." There is no ambiguity with the statement "prohibited from billing." *Id*. at GWFS00220453-54.

B.  <u>The Essence of the Bargain Was Effective Security Through Personnel Trained as Required by the Contract</u>.

The Court previously found that the "essence of the bargain was providing effective and qualified security at these facilities accomplished by fully trained and qualified personnel." Doc. 157. This is the correct analysis. GardaWorld's recycled summary judgment analysis raises nothing new.

C.  <u>The Government Did Not Know of GardaWorld's Annual Refresher Training Scheme</u>.

As an initial matter, despite the alleged close collaboration, Def. Brief at 12, the Government certainly was never informed by GardaWorld about what Relator found during discovery. Even though GardaWorld had an affirmative obligation to disclose to DoS issues like

those Relator identified during discovery, GardaWorld chose not to disclose the widespread scheme now discovered by Relator. Because of GardaWorld's intentional decision to hide their own misconduct, DoS did not learn about Defendants' non-compliance until Relator showed DoS some of the details uncovered about the true extent of the fraud. *See*, *e.g.*, M. Mancini Dep. Tr. (Doc. 147-34) at 343:4-354:21, 363:7-364:13, 354:14-364:22, 370:4-370:22, 373:16-19, 376:21-377:10); J. McNichols Dep. Tr. (Doc. 147-169) at 287:13-291:13, 296:9-22, 299:10-14, 300:8-18, 306:3-10, 307:14-308:2, 308:11-19, 311:8-11, 312:24-313:21, 315:9-17, 320:17-321:5); R. Rochez Dep. Tr. (Doc. 147-47) at 275:14-280:16.

GardaWorld apparently seeks to attack the Department of Justice and DoS's investigation. GardaWorld named Todd Swanson, lead Assistant United States Attorney, and the lead Office of Inspector general Special Agent, *as witnesses* for trial. By injecting this issue into the case, GardaWorld has opened the door to its representations to the Government during the investigation and afterwards. The jury will see, contrary to GardaWorld's representations, GardaWorld and its counsel never told OIG the full truth about what its personnel did and deprived the Government from making an informed decision about payments.

    D. <u>The Conduct at Issue is Neither Minor Nor Insubstantial</u>.

GardaWorld represented to the Court its employees quite possibly engaged in conduct GardaWorld believed could be criminal. *See* Email from S. Lerner, Nov. 14, 2023 (identifying to the Court five felonies Defendants' personnel may have committed). GardaWorld now takes the position the potential criminal is "minor" or "insubstantial." As to its brief, GardaWorld made this argument at summary judgment. It raises nothing new.

## VI. **Relator Will Prove Damages as Required by the Law.**

As with many other arguments, GardaWorld simply recycles an argument made previously. Relator incorporates his response to GardaWorld's docket entries (166-168), as well as prior arguments about GardaWorld's attempts to ex post re-write the contract to excuse their failure to train.

To briefly make the point, GardaWorld continues to fix a label on Relator's damages as "worthless services." The Court saw through GardaWorld's attempts to conflate "worthless services" as a theory of liability—which is not in this case. Doc. 157 at 28, n.10. Relator's damages theory is simple: WPS II plainly states that GardaWorld could not bill for employees who did not meet the training requirements, as they were "unqualified" and the positions were considered "unstaffed." The contract does not say there would be a discount or provide for partial payment. The contract said that GardaWorld was "prohibited from billing." A jury has every right to hold GardaWorld to the bargain it struck, conclude that "unqualified" means "unqualified, "unstaffed" means "unstaffed," and "unbillable" means GardaWorld could not bill—even if services were provided.

The zero-payment term of the contract matters because this is not a case where the parties are left to wonder what would have happened if, for example, a plane been delivered without a key component but the contract is silent as to that situtaion. Here, the contract makes crystal clear what happens if GardaWorld has an individual stand post who is not fully trained and qualified: they cannot bill even a penny. GardaWorld knew this to be the deal they struck. *See* Email from DoS, Mar. 6, 2020 (Doc. 130-6) (requiring retraining or immediate departure); Email from DoS, Mar. 10, 2020 (Doc. 130-7) (reminding GardaWorld managers not to bill for specific unbillable personnel due to failure to complete required training).

To be sure, this case is no different than any run-of-the-mill Anti-Kickback Statute, Stark Law, or other healthcare fraud FCA cases where a jury can award the full amount of claims paid, despite a patient actually receiving the health care treatment. *See*, *e.g.*, *United States ex rel Penelow v. Janssen Products, LP*, ECF 435 (D.N.J. Case No. 12-cv-7758) (reflecting jury verdict entered on June 13, 2024, for in excess of $100,000,000 (without trebling or penalties) even though Janssen provided the pharmaceuticals at issue). Attempting to label this case as a "worthless" services does not change the facts of the WPS II contract, the contractual language, and a jury can find these kinds of damages in a wide range of FCA cases.

GardaWorld may attempt to offer evidence why the jury should disregard the plain contract terms. The jury will also see, however, GardaWorld forfeited their opportunity to work with the Contracting Officer to negotiate an alternative resolution when they chose not to disclose the conduct, much less the extent of conduct, at issue to her.

In sum, GardaWorld's Trial Brief, in large part, recycles its summary judgment arguments. Relator looks forward to trying this case.

Respectfully submitted, this 18th day of June 2024.

                        **CLARK & SMITH LAW FIRM, LLC**
                        **BY:**

| | |
|---|---|
| 150 College Street | /s/ John Christopher Clark |
| Macon, Georgia 31201 | John Christopher Clark |
| Telephone: (478) 254-5040 | Georgia Bar No. 127353 |
| Facsimile: (478) 254-5041 | Richard L. Sizemore |
| chris@clarksmithsizemore.com | Georgia Bar No. 649449 |
| rick@clarksmithsizemore.com | *Co-Counsel for Plaintiff* |

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JUSTIN FAHN,<br><br>Plaintiffs,<br><br>vs.<br><br>AEGIS DEFENSE SERVICES, LLC,<br><br>Defendant. | CIVIL ACTION NO.<br><br>5:20-CV-00128-MTT |

## CERTIFICATE OF SERVICE

This certifies that I have this day served a true and correct copy of the above and foregoing **RELATOR'S RESPONSE TO DEFENDANT'S TRIAL BRIEF** upon all counsel of record by statutory electronic mail, as follows:

Mr. Bradley W. Pratt
Mr. Frank T. Bayuk
Bayuk Pratt, LLC
4401 Northside Parkway, Suite 390
Atlanta, Georgia  30327
*Attorneys for Relator*

Mr. Charles W. Byrd
Mr. J. Thomas Clarkson
Mr. John J. Van Why
Griffin Durham Tanner & Clarkson, LLC
5400 Riverside Drive, Suite 205
Macon, Georgia  31210
*Attorneys for Relator*

Mr. Bowen R. Shoemaker
Mr. Todd P. Swanson
Mr. W. Taylor McNeill
United States Attorney's Office
P. O. Box 1702
Macon, Georgia  31202
*Attorneys for United States
of America, ex rel.*

Mr. Jason C. Pedigo
Ellis Painter
P. O. Box 9946
Savannah, Georgia  31412
*Attorney for Relator*

Ms. Tara Lee
Mr. Benedict S. Bernstein
Mr. Scott Lerner
Ms. Helin Akcam
Ms. Melissa Taylormoore
Mr. Charles D'Oria
White & Case LLP
701 13th Street, NW
Washington, DC  20005
*Attorneys for Defendants*

Ms. Susan L. Grace
White & Case, LLP
1221 Avenue of the Americas
New York, New York  10020
*Attorneys for Defendants*

                                                         Mr. Charles E. Cox, Jr.
                                                         Charles E. Cox, Jr., LLC
                                                         484 1st Street, Suite 1
                                                         P. O. Box 67
                                                         Macon, Georgia 31202
                                                         *Attorney for Defendants*

This 18th day of June 2024.

                                                       **CLARK & SMITH LAW FIRM, LLC**
                                                       **BY:**

| | |
|---|---|
| 150 College Street | /s/ John Christopher Clark |
| Macon, Georgia 31201 | John Christopher Clark |
| Telephone: (478) 254-5040 | Georgia Bar No. 127353 |
| Facsimile: (478) 254-5041 | Richard L. Sizemore |
| chris@clarksmithsizemore.com | Georgia Bar No. 649449 |
| rick@clarksmithsizemore.com | *Co-Counsel for Plaintiff* |