UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* JUSTIN FAHN,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>GARDAWORLD FEDERAL SERVICES, LLC, and AEGIS DEFENSE SERVICES, LLC<br><br>　　　　　　　Defendants. | Civil Action No. 5:20-CV-00128-MTT |

## **DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

Defendant Aegis Defense Services, LLC (d/b/a GardaWorld Federal Services) ("GardaWorld") submits this Motion for Protective Order pursuant to Federal Rule of Civil Procedure 26(c) to prevent Relator's witness, Mr. Michael Norman, from evading his obligation to sit for a discovery deposition and respond to a document subpoena, only to subsequently agree to sit for a *de bene esse* deposition at Relator's request still having not complied with the document subpoena. On Friday, July 12, 2024, Relator's counsel noticed Mr. Norman's *de bene esse* deposition for Friday, July 19, 2024. As set forth below, the requested protective order is necessary to prevent undue burden and prejudice to GardaWorld and to ensure the fair and orderly administration of justice.

### BACKGROUND

On October 4, 2023, Relator moved for leave to file a Second Amended Complaint ("SAC"), which included detailed allegations concerning GardaWorld's alleged non-compliance with the Annual Refresher Training requirement of the WPS II Contract. *See generally* Doc. No. 84-7. The proposed SAC quoted from or made reference to declarations from a number of former

GardaWorld employees who claimed that GardaWorld "deliberately did not provide the required [Annual Refresher T]raining for their employees, and [] undertook a systemic effort to conceal this practice by forging sign in sheets and falsifying other required recordkeeping under the Contract." *See* Doc. No. 76-1 (SAC) ¶¶ 179–81.  One of the declarants was Michael Norman, a former GardaWorld employee who worked on the WPS II Contract.

GardaWorld attempted to serve subpoenas for both deposition testimony and documents on Mr. Norman on November 18, 2023, by email and on November 20, 2023, by process server. *See* Ex. 1 (Nov. 18, 2023, Email from H. Akcam to M. Norman); Ex. 2 (M. Norman Affidavit of Nonservice).  When the process server attempted to serve Mr. Norman personally, the process server was advised by a resident at Mr. Norman's address of record that Mr. Norman was "out the country doing security in the Middle East and [would not] be expected to be back until March or April."  Ex. 2.

Mr. Norman responded to GardaWorld's email on November 18, 2013, stating:

> I hope this message finds you all well. **I will not be able to attend as I'm not in country and won't be at that time. The wifi here is terrible** so I haven't yet been able to open the attached files but when I go into the office tomorrow I will be sure to do so. Hoping that you all will just be able to represent in my absence. Please let me know if that is feasible and I'll open the attachments tomorrow. Thank you for your time and understanding of my current situation.

Ex. 1 at 2 (emphasis added).  Mr. Norman subsequently followed up again with GardaWorld on November 21, 2023, after GardaWorld counsel had sought a time to speak with him in hopes of identifying alternative dates, as well attempting to have him voluntarily comply with GardaWorld's document subpoena. *Id.* at 1.  In that November 21st communication Mr. Norman stated: "Apologies, **I'll have someone contact you on my behalf** or reach back out at my earliest. Respectfully, Michael Norman."  *Id*. (Nov. 18-21 Email Chain with M. Norman) (emphasis added).

When GardaWorld counsel could not effectuate service on Mr. Norman, GardaWorld notified Relator of its actions to date and requested Relator's assistance in securing Mr. Norman's compliance with the two subpoenas. *See* Ex. 3 (Dec. 6, 2023, Email from S. Lerner to B. Pratt et al). Specifically, GardaWorld stated:

> Of the 26 declarants GardaWorld intends to depose, we have been unable to serve 8 individuals, despite numerous attempts. The 8 individuals for whom we have been unable to serve are: (1) Eddy Canela; (2) Ronald Crow; **(3) Michael Norman;** (4) Brandon Jakubowski; (5) Joel Lashley; (6) Daniel Lorona; (7) Thomas Giles; and (8) James Warden. In addition to our attempts to formally serve these individuals, we have tried to contact them through email and telephone. Those efforts have also been unsuccessful. **We have also asked for Relator's counsel's assistance on several occasions, but we have not received any such assistance. We will try once more to serve all of these individuals. Additionally, we will send another email to each of these individuals, CC'ing all counsel, asking if they will agree to waive service of the subpoenas, voluntarily produce documents, and voluntarily appear at a deposition.**

*Id.* (emphasis added). GardaWorld then emailed Mr. Norman on December 6, 2023, to see if he would voluntarily agree to accept service. *See* Ex. 4 (Dec. 6, 2023, Email from H. Akcam to M. Norman). In that communication, GardaWorld specifically requested that Mr. Norman make himself available to be deposed:

> GardaWorld has been attempting to serve you personally with a document and deposition subpoena that would require you to produce documents and provide sworn testimony in connection with the lawsuit. Those subpoenas are attached to this email. Specifically, we attempted to serve you on November 20 at the following address: 25 Acclaim at Lionspaw, Daytona Beach, FL 32124. The process server was informed by someone who identified themselves as the mother of your child that you are abroad working security in the Middle East.
>
> Given that our previous attempts to serve you with subpoenas have been unsuccessful, we are now requesting that you agree to voluntarily accept service of the attached subpoenas, agree to voluntarily produce the requested documents, and agree to voluntarily appear at a deposition, not to exceed seven hours, at a mutually agreeable location on a mutually agreeable date and time. The deposition would proceed with lawyers from GardaWorld, as well as lawyers from the U.S. Department of Justice on behalf of the U.S. Department of State, as well as Mr. Fahn's lawyers—all of whom are copied on this email. You would be required to

give the deposition under oath i.e. subject to the penalty of perjury. The deposition would be transcribed by a court reporter and recorded by a videographer.

Mr. Norman did not respond to GardaWorld's December 6 email, but after a subsequent follow-up by GardaWorld on December 8, 2023, to inquire if Relator's counsel, Jason Pedigo, was representing Mr. Norman, Mr. Norman responded on December 8, 2023, stating: "Sir, Mr Pedigo is the attorney for Mr. Fahn, which I would assume you guys are tracking. He reached out to me and I've informed him that you guys are now trying to reach out and he said he would deal with it from his end." *See* Ex. 5 (Dec. 8, 2023, Email Chain with M. Norman).

Approximately ten days later, on December 19, 2024, counsel for Relator provided GardaWorld with a status update on Mr. Norman. Relators' counsel explained that "Norman is deployed and does not want to be deposed during his deployment." *See* Ex. 6 (Dec. 19, 2023, Email from J. Pedigo to H. Akcam) (emphasis added). GardaWorld was not able to depose Mr. Norman and was never able to obtain responses to its document subpoena.

On June 25, 2024, Relator notified GardaWorld that he intended to take a trial preservation deposition of Mr. Norman. *See* Ex. 7 (June 25, 2024, Email from C. Clark to T. Lee and S. Lerner). GardaWorld objected and the parties subsequently met and conferred on July 5, 2024. During that meet and confer, Relator stated he believed Mr. Norman could be deposed *de bene esse* and proceeded to notice Mr. Norman's deposition on Friday, July 12, 2024 to take place on Friday, July 19, 2024. GardaWorld now moves for a protective order to prevent Mr. Norman's untimely *de bene esse* deposition.

**ARGUMENT**

Once Relator initially identified Mr. Norman as one of the declarants in his case, GardaWorld duly noticed Mr. Norman's deposition for discovery purposes. However, Mr. Norman citing his deployment for a Department of State contract in Baghdad, Iraq, refused to engage with

4

GardaWorld to either identify a date that would allow him to sit for a deposition once he was home from his deployment, to sit for a remote deposition (as other witnesses had done), or to respond to GardaWorld's document subpoena. Now, three days before trial, Relator seeks to take a *de bene esse* deposition of Mr. Norman to preserve his testimony for trial, which Mr. Norman has consented to notwithstanding the fact that he is deployed for a Department of State contract in Baghdad, Iraq—just as he was when GardaWorld sought his discovery deposition in 2023. Allowing Mr. Norman to refuse to be deposed during discovery yet permitting him to be deposed *de bene esse* for trial, severely prejudices GardaWorld and undermines the discovery process.

Federal Rule of Civil Procedure 26(c) grants the court discretion to issue protective orders to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. Specifically, the court may forbid the requested discovery or set terms and conditions for its performance. The Eleventh Circuit has upheld the broad discretion of district courts to manage the discovery process and issue protective orders to ensure fairness and efficiency. *See generally Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002) (*citing Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001)); *see also Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)). For the following reasons, a Protective Order prohibiting Mr. Norman's *de bene esse* deposition is warranted.

First, allowing Mr. Norman to avoid a discovery deposition and then sit for a *de bene esse* deposition constitutes an abuse of the discovery process. The purpose of discovery is to allow both parties to gather information essential for the preparation of their cases. As the Eleventh Circuit has noted, discovery serves to "make trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Weissman v. The Nat'l Ass'n of Sec. Dealers, Inc.*, 2008 WL 1723673, at *1 (S.D. Fla. Apr. 10, 2008) (citing *United States*

*v. Proctor & Gamble, Co.*, 356 U.S. 677, 682 (1958) (citation omitted)). This is especially so when (1) the basis for the purported "undue burden" that would enable Mr. Norman to testify *de bene esse* also existed when GardaWorld sought his discovery deposition, and (2) Mr. Norman has only communicated through Relator's counsel even though Relator's counsel—to the best of GardaWorld's knowledge—does not represent Mr. Norman.

Second, GardaWorld was entitled to a fair opportunity to question Mr. Norman during discovery to explore the facts and issues relevant to this case. By claiming he was unable to sit for a discovery deposition because of his deployment and possibly the purported "terrible" wifi at the U.S. Embassy in Baghdad[1], GardaWorld was deprived of its right to thoroughly examine his testimony, receive and review relevant documents in Mr. Norman's possession, and prepare adequately for trial. Allowing Relator to now take his deposition to preserve his trial testimony even when these same conditions exist would result in significant prejudice, as GardaWorld would be forced to confront Mr. Norman's testimony without the benefit of prior discovery which Mr. Norman refused to provide. A deposition to preserve testimony for trial should not a substitute for discovery depositions when a party made all reasonable and available attempts to previously secure the discovery deposition.

Third, the issuance of a protective order will promote judicial consistency. Allowing a witness to bypass discovery depositions undermines the structured process established by the Federal Rules of Civil Procedure. A protective order would prevent the *ad hoc* arrangements that Relator has benefited from and that ultimately constitute an unfair prejudice to GardaWorld. *See England v. Allen*, 2019 WL 2743481, at *8 (N.D. Ill. July 1, 2019) (holding witnesses would be barred from testifying at trial if they refused to sit for discovery depositions).

---

[1] Several witnesses have now successfully been deposed from the U.S. Embassy in Baghdad.

6

Fourth, any attempt by Relator to rely on the Court's ruling at the June 21, 2024, Pre-Trial Hearing approving trial preservation depositions for Department of State officials is unavailing. *See* June 21, 2024 Hrg. Tr. at 12:12–17. Unlike Mr. Norman, none of the Department of State personnel who are sitting for or who have already sat for *de bene esse* depositions—John McNichols, Scott Jenkins or Rodolphe Rochez—refused to participate in the discovery depositions that GardaWorld sought.[2]

## CONCLUSION

For the reasons set forth above, GardaWorld respectfully requests that this Court grant its Motion for Protective Order, preventing Mr. Michael Norman from declining to sit for a discovery deposition, but then subsequently agreeing to sit for a *de bene esse* deposition at Relator's request, when the *same exact extenuating circumstances* existed when GardaWorld sought Mr. Norman's discovery deposition that now exist allegedly necessitating his *de bene esse* deposition. Such an order is necessary to prevent undue burden and prejudice to GardaWorld and to ensure the fair and orderly administration of justice.

---

[2] GardaWorld notes that Relator also noticed a *de bene esse* deposition for Mr. Alex Lopezzamora, another former GardaWorld employee who is deployed on the same Department of State contract in Baghdad, Iraq. While GardaWorld preserved its objections to the propriety of Mr. Lopezzamora's deposition as it does not believe that deposition should have proceeded without leave from the Court, GardaWorld did not file a Motion for a Protective Order because Mr. Lopezzamora—unlike Mr. Norman—at least sat for his discovery deposition. GardaWorld will seek a ruling on its objection to Mr. Lopezzamora's testimony through the Court-established procedures for rulings on *de bene esse* objections.

| | |
|---|---|
| Dated: July 15, 2024 | Respectfully submitted, |
| | **WHITE & CASE** LLP |
| | /s/ *Tara M. Lee* |
| Charles E. Cox, Jr. | Tara M. Lee (admitted *pro hac vice*) |
| CHARLES E. COX JR., L.L.C. | Scott Lerner (admitted *pro hac vice*) |
| 484 1st Street, Suite 1 | Melissa Taylormoore (admitted *pro hac vice*) |
| P.O. Box 67 | Benedict S. Bernstein (admitted *pro hac vice*) |
| Macon, GA 31202 | Blair E. Trahan (admitted *pro hac vice*) |
| Telephone: + 1 478 757 2990 | Helin Akcam (admitted *pro hac vice*) |
| charles@cecoxjr.com  Macon, Georgia | 701 Thirteenth Street, NW |
| | Washington, D.C. 20005 |
| | Telephone:     + 1 202 626 3600 |
| | Facsimile:      + 1 202 639 9355 |
| | tara.lee@whitecase.com |
| | scott.lerner@whitecase.com |
| | melissa.taylormoore@whitecase.com |
| | benedict.bernstein@whitecase.com |
| | blair.trahan@whitecase.com |
| | helin.akcam@whitecase.com |
| | |
| | *Counsel for Defendant* |

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 15, 2024, I caused a true and correct copy of the foregoing document to be served on all counsel of record by filing it on the Court's CM/ECF system.

*/s/ Tara M. Lee*

Tara M. Lee